IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                              Case Nos.: 4:10cr46/MW/GRJ
                                                                    4:13cv687/MW/GRJ

FRANCO NICHOLAS PADGETT

---

## AMENDED REPORT AND RECOMMENDATION

This matter is before the court upon Petitioner's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 and supporting memorandum of law. (ECF Nos. 145, 150.) The Government filed a response (ECF No. 158) and Petitioner filed a reply. (ECF No. 160.) After review of the record, the undersigned concluded that Petitioner had not raised any issue requiring an evidentiary hearing and recommended that the § 2255 motion be denied. (ECF No. 179.) Petitioner filed objections to the recommendation and the district judge remanded the case for consideration of an issue raised for the first time in Petitioner's objections, relating to Ground One of his motion. (ECF Nos. 180, 181.) The Government has now filed a response, as directed (ECF No. 185), and

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

Petitioner has filed a reply. (ECF No. 187.)    After review of Petitioner's

objections and the parties' new submissions, it remains the

recommendation of this court that Petitioner's motion to vacate should be

denied.

## PROCEDURAL BACKGROUND

Petitioner Franco Nicholas Padgett was charged along with Christy

Jean Bailor in a two count indictment with conspiracy to commit burglary

with the intent to steal controlled substances in violation of 18 U.S.C. §

2118(d), and possession with intent to distribute controlled substances

listed under schedule II, which substances were stolen from the Eastwood

Pharmacy in Tallahassee, Florida in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(C), 841(b)(1)(E)(i), and 841(b)(2), and 18 U.S.C. § 2. (ECF No.

1.) Bailor, who used to work at the pharmacy, provided information about

the layout of the pharmacy, which was used by Shane Eugene Maxwell,

Holli Prather, Petitioner, and Sarah Padgett, Petitioner's sister, to plan the

burglary.[1]    Each of the co-conspirators, with the exception of Petitioner,

pleaded guilty.

---

[1] Maxwell, Prather and Sarah Padgett were charged in Case 4:10cr5/RH.

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

Petitioner proceeded to trial, represented by appointed counsel Clifford Davis, Esq.   After a two day jury trial, the jury convicted him as charged.   (ECF Nos. 68, 118, 120.) The evidence showed, that although Petitioner did not participate in the actual burglary, he was present at a planning meeting; he provided bleach to clean up blood left at the scene at the other conspirators' request; he drove Maxwell, Prather and Sarah Padgett back to the pharmacy on the night of the burglary so they could use the bleach to destroy evidence of the crime; and he received a "cut" of the drugs stolen during the burglary. (*See* ECF No. 79, PSR ¶ 25; ECF No. 136 at 7-8.)[2]  Petitioner's defense was that there was a lack of physical evidence connecting him to the crime, and that the only evidence supporting a finding that he was even minimally involved was the testimony of alleged co-conspirators, who were addicts or drug users with a strong motivation to lie. (ECF No. 120 at 322-337.)

Pursuant to the Presentence Investigation Report ("PSR"), Petitioner's base offense level was 28, and he had a criminal history

---

[2] Additional details surrounding the offense conduct are contained in the PSR as well as the Government's response to the § 2255 and are set forth herein only as necessary for resolution of Petitioner's claims.   (*See* ECF No. 79; ECF No. 158 at 3-13.)

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

category of IV. (ECF No. 79.) The applicable guidelines range in accordance with these calculations was 110 to 137 months.

Shortly after the final PSR was prepared, Attorney Bernie Daley was appointed to represent Petitioner at sentencing. In making the substitute appointment, the Court noted that Attorney Davis had effectively represented Petitioner, but that irreconcilable differences had arisen between him and his client. (ECF No. 83.). Mr. Daley made numerous objections, and at sentencing, the court overruled in turn the objections to the quantity of drugs attributed to him, the lack of minor role adjustment, and the scoring of certain prior offenses. (ECF No. 122 at 4-6.) When given the opportunity to address the court, Petitioner noted that the statement in the PSR that Ms. Padgett had said he received part of the drugs was mistaken because neither she nor Ms. Prather had made such a claim. He also denied that he had been with the other co-defendants at the Motel 6 for the planning meeting. (ECF No. 122 at 8-9.) After Petitioner made his statement to the court, counsel argued that his client had a lesser role in the offense than the role of the other defendants, that his criminal history category overrepresented the seriousness of his criminal history, and that a

substantial variation from the applicable guideline range was warranted.
(ECF No. 122 at 10-12, 14.)

The court sentenced Petitioner to concurrent terms of 110 months imprisonment on each count. (ECF No. 103.)[3] The sentence included restitution in the amount of $15,281.16, jointly and severally with Shane Maxwell, Holli Prather, Sarah Padgett and Christy Bailor.

Petitioner appealed, raising four grounds for relief. He contended that (1) the introduction of hearsay statements by an unidentified informant violated his Confrontation Clause rights; (2) the district court committed plain error when it admitted evidence of prior drug dealing; (3) the evidence was insufficient to sustain a conviction for conspiracy to commit burglary; and (4) his sentence was procedurally unreasonable. (ECF No. 136.). The Eleventh Circuit found no error and affirmed his convictions and sentence on January 15, 2013. (ECF No. 136.)

---

[3] Petitioner's sentence was later reduced from 110 months to 92 months pursuant to Amendment 782 to the Sentencing Guidelines due to a two level reduction in his base offense level.   (ECF No. 168).

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

Petitioner's initial motion to vacate was timely filed in December of 2013.   (ECF No. 141.) He amended his motion pursuant to court order and filed a memorandum in support. (ECF No. 145, 150.)[4]  In his amended motion ("motion"), Petitioner raises ten grounds for relief, which encompass seven claims of ineffective assistance of counsel, two allegations of due process violations by the Government and a sixth amendment claim.   The Government opposes the motion in its entirety.

## **ANALYSIS**

### ***General Standard of Review***

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28

---

[4]  Petitioner moved for leave to file a second amended motion, but ultimately chose to pursue relief pursuant to the first amended motion.   (ECF Nos. 147-149.)

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

U.S.C. § 2255(a); <u>McKay v. United States</u>, 657 F.3d 1190, 1194 n. 8 (11th

Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions

of constitutional rights and for that narrow compass of other injury that

could not have been raised in direct appeal and would, if condoned, result

in a complete miscarriage of justice.'"   <u>Lynn v. United States</u>, 365 F.3d

1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental

miscarriage of justice" exception recognized in <u>Murray v. Carrier</u>, 477 U.S.

478, 496 (1986), provides that it must be shown that the alleged

constitutional violation "has probably resulted in the conviction of one who

is actually innocent . . . ."

The law is well established that a district court need not reconsider

issues raised in a section 2255 motion which have been resolved on direct

appeal.   <u>Stoufflet v. United States</u>, 757 F.3d 1236, 1239 (11th Cir. 2014);

<u>Rozier v. United States</u>, 701 F.3d 681, 684 (11th Cir. 2012); <u>United States</u>

<u>v. Nyhuis</u>, 211 F.3d 1340, 1343 (11th Cir. 2000); <u>Mills v. United States</u>, 36

F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided

adversely to a defendant on direct appeal, it cannot be re-litigated in a

collateral attack under section 2255.   <u>Nyhuis</u>, 211 F.3d at 1343 (quotation

omitted).    Broad discretion is afforded to a court's determination of

whether a particular claim has been previously raised.    Sanders v. United

States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by

different factual allegations . . . or supported by different legal arguments . .

. or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a

substitute for direct appeal, and issues which could have been raised on

direct appeal are generally not actionable in a section 2255 motion and will

be considered procedurally barred.    Lynn, 365 F.3d at 1234–35; Bousley

v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657

F.3d 1190, 1195 (11th Cir. 2011).    An issue is "'available' on direct appeal

when its merits can be reviewed without further factual development."

Lynn, 365 F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).    Absent a

showing that the ground of error was unavailable on direct appeal, a court

may not consider the ground in a section 2255 motion unless the defendant

establishes (1) cause for not raising the ground on direct appeal, and (2)

actual prejudice resulting from the alleged error, that is, alternatively, that

he is "actually innocent."    Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

622 (citations omitted).    To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."    Lynn, 365 F.3d at 1235.    A meritorious claim of ineffective assistance of counsel, the standards for which are set forth in more detail below, can constitute cause.    *See* Nyhuis, 211 F.3d at 1344.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015); Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008).    Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    Gordon, 518 F.3d at 1301 (citing Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true would prove he is entitled to relief.    *See* Hernandez v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.    *See*

Winthrop–Redin v. United States, 767 F .3d 1210, 1216 (11th Cir. 2014)

(explaining that "a district court need not hold a hearing if the allegations [in

a § 2255 motion] are ... based upon unsupported generalizations") (internal

quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th

Cir. 2004).   Even affidavits that amount to nothing more than conclusory

allegations do not warrant a hearing.   Lynn, 365 F.3d at 1239.   Finally,

disputes involving purely legal issues can be resolved by the court without

a hearing.

## Petitioner's Specific Claims for Relief

### *1.   Sixth Amendment Right to Jury Trial Was Violated[5]*

Petitioner's first claim is that his Sixth Amendment right to a jury trial

was violated because the jury was not given special instructions as to drug

quantity or type. Therefore, he argues, absent a special verdict and absent

the Government's filing of an § 851 notice, the court could not sentence

him above the five year statutory maximum set forth in § 841(b)(2).

---

[5] This court originally recommended that Petitioner's amended motion be denied.   The
Petitioner submitted detailed objections in which he argued, for the first time, that
because the Government did not file a notice pursuant to 21 U.S.C. § 851 before trial,
the court did not have jurisdiction to exceed the five year statutory maximum sentence
sent forth in § 841(b)(2).   (ECF No. 180 at 1-2.)   The district court remanded the case
for consideration of this claim which is discussed in this section of the recommendation.

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

This claim, which is framed as a stand-alone Sixth Amendment claim, could have been raised on appeal.   As such it is procedurally barred. *See* Lynn, 365 F.3d at 1234–35; Bousley, 523 U.S. at 621; McKay, 657 F.3d at 1195.   Petitioner notes on the § 2255 form that this issue was not raised on appeal due to ineffective assistance of appellate counsel.   (ECF No. 145 at 5.) Clearly, this is not equivalent to raising the claim as an ineffective assistance of counsel claim. Nonetheless, the pleadings of *pro se* litigants are entitled to liberal construction and are held to less stringent standards than formal pleadings drafted by attorneys. *See* Haines v. Kerner, 404 U.S. 519 (1972). Therefore, the Court will liberally construe Petitioner's claim as incorporating a claim of ineffective assistance of appellate counsel due to counsel's failure to raise the arguments Petitioner now raises.

Petitioner was charged in Count Two of the indictment with possession with intent to distribute a controlled substance in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(1)(E)(i), and 841(b)(2) and Title 18 U.S.C. § 2.   (ECF No. 1.)   Each provision applies to a particular schedule or schedule of drugs. Violations of section 841(b)(1)(C)

(possession of schedule I and II substances) carry a maximum penalty of

20 years, or 30 years with a prior felony drug conviction; violations of

section 841(b)(1)(E)(i) (schedule III substances) carry a maximum penalty

of 10 years, or 20 years after a prior felony drug conviction; and violations

of § 841(b)(2) (schedule IV substances) carry a maximum penalty of 5

years, or 10 years after a felony drug offense has become final.

On the second day of trial, defense counsel Clifford Davis, Esq.

requested a special verdict form that would define or identify the type of

drug. (ECF No. 120 at 217.) In response, the Government argued that no

special finding as to quantity was required "because it does not trigger a

mandatory minimum sentence given the charged drugs" and "any

possession of any of the drugs, or any act in furtherance of the conspiracy

would establish guilt if there's a unanimous finding as to Count 1."   (ECF

No. 120 at 217-218.) The Court took the matter under advisement, but

ultimately did not grant the request. (ECF No. 120 at 218, 353.)

The Court's jury instructions tracked the language of the indictment

in identifying the substances with which Petitioner was charged of

possessing. (ECF No. 65 at 13.) The jury was not charged with the

responsibility of identifying either the substance or substances that Petitioner possessed, or the quantity of each. The verdict form included neither a list of controlled substances nor citation to the statutory sections enumerated in the indictment. Rather it merely provided a space for the jury to indicate whether Petitioner was guilty of "possession with intent to distribute a controlled substance." (ECF No. 68.) Thus, in reaching its verdict of guilty, the jury was not required to report any findings as to the substance or substances involved in this case.

As reflected in the PSR, the offense conduct in this case involved both Schedule I/II Opiates and Stimulants, which fall under § 841(b)(1)(C), and Schedule IV substances, which fall under § 841(b)(2). (ECF No. 79, PSR ¶ 20). The substances were converted to marijuana equivalents, yielding a total of 648.9 kilograms of marijuana. (ECF No. 79, PSR ¶ 21). Despite the quantity of drugs attributable to him, in light of the lack of specific findings by the jury, Petitioner's sentence with respect to Count Two could not have exceeded the statutory maximum for the controlled substance with the lowest penalty. *See* United States v. Allen, 302 F.3d 1260 (11th Cir. 2002).

The PSR states that Petitioner was subject to a maximum unenhanced term of imprisonment of twenty years pursuant to 21 U.S.C. § 841(b)(1)(C). (ECF No. 79, PSR ¶ 75.) The omission of any reference to 21 U.S.C. § 841(b)(2) was not among the written defense objections to the PSR filed by Petitioner's attorney, Bernard Daley, who had been appointed to represent Petitioner at sentencing. (*See* ECF No. 79 at ¶¶ 99-108; ECF No. 83.)    Additionally, neither the Government nor the defense raised this issue at sentencing. (ECF No. 122 at 3-7.) The Final Judgment adopted the error in the PSR and reflects that Petitioner was sentenced under 21 U.S.C. § 841(b)(1)(C) to a term of 110 months imprisonment, which was within the maximum term proscribed by that statute. (*See* ECF No. 103 at 1.)    As noted above, this issue was not raised on appeal (ECF No. 136), and Petitioner now contends that this was due to ineffective assistance of counsel.

Given a proper § 851 notice, Petitioner could have been subject to an enhanced sentence. Petitioner's PSR reflects that in September of 2002, Petitioner pleaded nolo contendere to charges of possession of a controlled substance and driving while license suspended or revoked. (ECF No. 79,

PSR ¶ 50.) The PSR describes the controlled substance in Petitioner's possession as Xanax pills, which is a brand name of alprazolam. Alprazolam is a schedule IV controlled substance under Florida law, unauthorized possession of which is a third degree felony. *See* Fla. Stat. §§ 893.03(4)(a); 893.13(1)(a)2. This conviction could have supported the filing of a Notice of Enhancement pursuant to 28 U.S.C. § 851. However, none was filed.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.   Evitts v. Lucey, 469 U.S. 387, 396 (1985). The Sixth Amendment, however, does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.   Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Knowles v. Mirzayance, 556 U.S. 111, 126–127 (2009); Jones v. Barnes, 463 U.S. 745, 751–52 (1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991). It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective. Smith, 528 U.S. at 288 (citing

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also* Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing Smith). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."   Barnes, 463 U.S. at 751–52.   In fact, this is the "hallmark of effective appellate advocacy."   Smith v. Murray, 477 U.S. 527, 536 (1986).   The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective. *Id.*; Heath, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); Reutter v. Secretary for Dept. of Corrections, 232 F. App'x 914, 917 (11th Cir. 2007) (citing Heath).

To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal.   Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304,

1310 (11th Cir. 2008); *see* Philmore v. McNeil, 575 F.3d 1251, 1264 (11th

Cir. 2009) (holding that claims for ineffective assistance of appellate

counsel are governed by the same standards applied to trial counsel under

Strickland v. Washington, 466 U.S. 668, 687 (1984)).

At the time of Petitioner's appeal, controlling law in the Eleventh

Circuit provided that strict compliance with the procedural requirements of §

851 was a jurisdictional requirement. United States v. Harris, 149 F.3d

1304 (11th Cir. 1998).[6]  Therefore, appellate counsel had an available

challenge to Petitioner's sentence on Count Two as exceeding the court's

jurisdiction due to the Government's failure to file a § 851 notice. Had

counsel raised this jurisdictional issue, despite having overlooked it at

sentencing, Petitioner arguably would have been entitled to resentencing

---

[6] The Eleventh Circuit has recently recognized that the holding in Harris has been abrogated by subsequent holdings of the Supreme Court.  *See* United States v. DiFalco, 837 F.3d 1207 (11th Cir. 2016) (*citing* United States v. Ladson, 643 F.3d 1335, 1343 n.11 (11th Cir. 2011) (*citing* Eberhart v. United States, 546 U.S. 12, 16, 126 S. Ct. 403, 163 L.Ed.2d 14 (2005); Kontrick v. Ryan, 540 U.S. 443, 455, 124 S. Ct. 906, 157 L.Ed.2d 867 (2004))).   In DiFalco*,* which involved a direct appeal, the Eleventh Circuit held that although 21 U.S.C. § 851 imposes mandatory requirements on the Government, these requirements are not jurisdictional, and thus they may be waived. 837 F.3d at 1219-1220.   Defendant concedes in his traverse to the Government's response that his jurisdictional claim has been rendered moot due to changes in the law.   (ECF No. 187 at 1, citing Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320 (11th Cir. 2004).

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

on Count Two. While this may have been so, Petitioner is not entitled to

relief because the concurrent sentence doctrine removes the certainty from

this equation.

The concurrent sentence doctrine provides that, "if a defendant is

given concurrent sentences on several counts and the conviction on one

count is found to be valid, an appellate court need not consider the validity

of the convictions on the other counts." In re Davis, 829 F.3d 1297, 1299

(11th Cir. 2016) (quoting United States v. Fuentes-Jimenez, 750 F.2d 1495,

1497 (11th Cir. 1985)); United States v. Bradley, 644 F.3d 1213, 1293 (11th

Cir. 2011) (quoting Fuentes-Jimenez, 750 F.2d at 1497); In re Williams,

826 F.3d 1351 (11th Cir. 2016) (applying the concurrent sentence doctrine

to deny an inmate's application to file a second or successive § 2255

motion under Johnson); In re Clayton, 829 F.3d 1254, 1266 n.16 (11th Cir.

2016) (characterizing the concurrent sentence doctrine as treating an illegal

sentence as harmless "if a prisoner is serving another sentence that is just

as long as the illegal one"); but see Ray v. United States, 481 U.S. 736

(1987) (application of special monetary assessment to challenged

conviction required review of conviction, despite existence of two

concurrent sentences). The doctrine is not a jurisdictional bar to consideration of challenges to multiple convictions, but merely a rule of judicial convenience where its use is appropriate. <u>Fuentes-Jimenez</u>, 750 F.2d at 1497; <u>Benton v. Maryland</u>, 395 U.S. 784, 787-791 (1969); <u>United States v. Casey</u>, 428 F.2d 229, 232 (5th Cir. 1970). Only when the defendant would suffer "adverse collateral consequences from the unreviewed conviction" does the doctrine not apply.    <u>Davis</u>, 829 F.3d at 1299; <u>Bradley</u>, 644 F.3d at 1293; <u>Fuentes-Jimenez</u>, 750 F.2d at 1497. Whether the doctrine applies to jurisdictional challenges is unclear. *See* <u>Government of Canal Zone v. Burjan</u>, 596 F.2d 690, 695 n.8 (5th Cir. 1979) (the court decided to "pretermit a decision as to the applicability of the concurrent sentence doctrine and reach the merits of the jurisidictional challenge to the conviction.")

Petitioner was sentenced to identical concurrent terms on the two counts. Had this issue been raised, reviewed, and decided in Petitioner's favor on appeal, only his sentence on Count Two would have been affected. Absent any guidelines recalculation, his original 110 month sentence on Count One would have remained intact until the later

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

application of Amendment 782, following which his sentence was reduced to 92 months. (*See* ECF No. 168.)   In short, despite the error, a reduction in his sentence on only one of the two counts would have no practical effect on the length of Petitioner's total sentence.

Consequently, while Petitioner's appellate counsel could have raised a challenge to Petitioner's sentence under Count II based upon the government's failure to file a § 851 notice, that does not entitle Petitioner to relief because Petitioner has not shown prejudice from counsel's failure to raise this issue. And as a stand alone Sixth Amendment claim Petitioner is not entitled to relief because the law in the Eleventh Circuit now provides that the claim is not jurisdictional, DiFalco, 837 F.3d 1207, and therefore is procedurally defaulted where, as here, the claim was never raised on appeal.

### 2.   *Due Process Violations (Claims Two and Three)*

Petitioner contends that the Government violated due process when it used false testimony and when it failed to disclose payments to a key witness.

First, Petitioner argues that the Government submitted the false testimony of Christy Bailor to the effect that Shane Maxwell called Bailor's cell phone during the burglary because Petitioner's cell phone had been shut off because he did not pay the bill. He contends that the Government knew that this testimony was false, because it had cell phone records that indicated both that Petitioner's phone was operational and that Bailor and Petitioner had exchanged cell phone calls just prior to the burglary.

A review of Ms. Bailor's testimony reveals that it was internally inconsistent on not only this point but others. (*See* ECF No. 120 at 232-274.) Petitioner is correct that Ms. Bailor testified that Shane Maxwell called her cell phone to reach the Petitioner because Petitioner's phone had been shut off because he "did not pay the bill." (ECF No. 120 at 247.) However, she also testified that only a day or two before the robbery, she had called Petitioner on his cell phone, and in later testimony reaffirmed that Petitioner had a phone, which did not suggest it was non-operational. (*See* ECF No. 120 at 239, 262, 267.) Ms. Bailor was not asked to explain this inconsistency, and in the Government's closing, it stated that Ms. Bailor's phone was used because Petitioner had "run out of minutes on his boost

phone," a slightly different characterization of her testimony, during which she did not mention Petitioner's cell provider. (ECF No. 120 at 339.) Petitioner has not proven that Ms. Bailor's statement that his phone was not operational on the night of the burglary was false, and even if it was, this was a matter for impeachment and argument. Furthermore, the question of which phone was used when Petitioner took the call from Maxwell in which Maxwell asked for clean-up assistance after the burglary is of no consequence. Regardless of which phone was used, the evidence showed that Petitioner responded to the call for assistance by supplying the other conspirators with bleach, as requested, for which he was rewarded with a share of the burglary proceeds. He has not established a constitutional violation.

Next, in his third claim for relief, Petitioner claims that the Government failed to disclose the fact that it paid Ms. Bailor $900 "for her testimony" at trial. (ECF No. 145 at 8.) He notes that he only learned of this when Bailor disclosed the information to him during a conversation they had outside while the jury was deliberating. Petitioner contends that this

payment to a key Government witness should have been disclosed to the defense.

Petitioner attempts to draw a parallel between this case and Guzman v. Sec'y, Dep't of Corr., 698 F. Supp. 2d 1317 (M.D. Fla.), aff'd, Guzman v. Sec'y, Dep't of Corr., 661 F.3d 602 (11th Cir. 2011). In Guzman, a witness, who was an admitted crack cocaine addict and prostitute, testified that she had received no benefit for her testimony, when in fact she had received food, lodging and dismissal of pending criminal charges against her as well as a $500 reward. 698 F. Supp. 2d at 1332. The lead detective also falsely testified about the payment of reward money to the witness, who was known to have lied on previous occasions. The Guzman court found that there was a Giglio violation because under the circumstances of that case, the false testimony from the two witnesses was material in that there was a reasonable likelihood that it could have affected the verdict. 698 F. Supp. 2d at 1333-34.

In its response, the Government argues that the "payment" to Ms. Bailor was actually reimbursement for travel expenses. Ms. Bailor, who resided out of state at the time of Petitioner's trial, was issued a subpoena

to testify at Petitioner's trial. She incurred travel expenses in complying with the subpoena. According to the Department of Justice Guiding Principles for Obtaining Witness Services under the Fees and Expenses of Witnesses Appropriation, Ms. Bailor received an advance travel cost reimbursement of $928.20 from the United States Marshal's Service. (ECF No. 158, Exh. A.)).

The Petitioner argues in response that Ms. Bailor received in excess of the normal mileage allotment, citing 5 U.S.C. § 5704. This statute does not specify a particular amount for mileage. The mileage rate at which Ms. Bailor was reimbursed was the rate in effect at that time. *See* https://www.gsa.gov/portal/content/103969. Petitioner's speculation that the Government may have failed to disclose other payments it made to Ms. Bailor or other witnesses is nothing more than speculation which does not entitle him to relief.

Ms. Bailor was not "paid for her testimony," there was no constitutional violation, and Petitioner is not entitled to relief.

### 3.   *Ineffective assistance of counsel (Claims Four through Ten)*

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal.   Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694 F.3d, 1, 8 (11th Cir. 2012); United States v. Campo, Case 14-15541; 2016 WL 6518520 n.5 (11th Cir. Nov. 1, 2016).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.   Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).   In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was

reasonable considering all the circumstances."   Strickland, 466 U.S. at

688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th

Cir. 2007).   Reviewing courts are to examine counsel's performance in a

highly deferential manner and "must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable professional

assistance."   Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009)

(quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States,

218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of

reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d

362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to

error-free representation").   Counsel's performance must be evaluated

with a high degree of deference and without the distorting effects of

hindsight.   Strickland, 466 U.S. at 689.   To show counsel's performance

was unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take."   Gordon v. United

States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler,

218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to

be unsuccessful [does not] demonstrate ineffectiveness." Chandler, 218

F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   Strickland, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).   Or in the case of alleged sentencing errors,

a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.   Glover v. United States, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.   *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing* Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (*citing* Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Counsel is not ineffective for failing to preserve or argue a meritless claim.   Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015)

(citing Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th

Cir. 2008)).   This is true regardless of whether the issue is a trial or

sentencing issue.   *See, e.g.,* Sneed v. Florida Dep't of Corrections, 496 F.

App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless Batson claim not

ineffective assistance of counsel);   Lattimore v. United States, 345 F.

App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a

meritless objection to an obstruction enhancement); Brownlee v. Haley,

306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing

to raise issues clearly lacking in merit).

To prevail on a claim for ineffective assistance of appellate counsel, a

defendant must show that (1) appellate counsel's performance was

deficient, and (2) but for counsel's deficient performance he would have

prevailed on appeal.   Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304,

1310 (11th Cir. 2008); *see* Philmore v. McNeil, 575 F.3d 1251, 1264 (11th

Cir. 2009) (holding that claims for ineffective assistance of appellate

counsel are governed by the same standards applied to trial counsel under

Strickland v. Washington, 466 U.S. 668, 687 (1984)).   Counsel is clearly

not ineffective for failing to raise a meritless issue on appeal.   Shere, 537

F.3d at 1311; Ladd v. Jones, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   Chandler, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   United States v.

Morrow, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above. The court will review Petitioner's specific claims in turn in accordance with these principles.

### a.   *Failure to Call Witnesses*

Petitioner first contends that counsel failed to call Erin Guthrie and Story Fortner as defense witnesses. He asserts that these witnesses could have contradicted Bailor's testimony about his whereabouts the night of the burglary. Petitioner explains that he and Bailor went to stay overnight at Guthrie's apartment on the night in question. He says that at approximately 10:30 p.m., Bailor left the apartment and drove to an auto repair shop so her vehicle could be first in line to be repaired the following day. Bailor called Petitioner and asked him to have either Guthrie or Fortner pick her

up. According to Petitioner, Guthrie picked up Bailor and drove her back to the apartment. The next morning Guthrie dropped both Petitioner and Bailor at the repair shop before proceeding to work. He states that either Guthrie or Fortner could confirm this story, and thus establish that he did not have access to a vehicle, as claimed by Bailor. Petitioner asserts that he provided Guthrie and Fortner's contact information to counsel but that counsel failed to subpoena them at witnesses. Petitioner notes that he contacted them and asked them to appear at his trial, and when they did appear, it was Petitioner, and not counsel, who instructed them to remain outside the courtroom in case the defense needed to call them as witnesses.

Petitioner's former attorney, Clifford Davis submitted an affidavit in response to the motion to vacate. With respect to claim four, attorney Davis avers that both he and his paid investigator interviewed Erin Guthrie and Story Fortnter. (ECF No. 158-2 at 1.) Counsel states that he did not call them as witnesses because their testimony confirmed the testimony of Bailor. Counsel recalls that each witness denied having heard a phone call or having heard Petitioner leave the apartment, but that they could not say

that he did not leave without their knowing it, and each confirmed that Bailor's car was at the apartment.

Counsel also noted that the physical appearance of the witnesses was "unprofessional." Their look, dress and demeanor was consistent with the appearance of the Government witnesses, who admitted to being methamphetamine and narcotic abusers. Appended to Mr. Davis's affidavit is a copy of an unsworn email from his investigator, Monica Jordan. She notes that she recalls that these witnesses were not called for strategic purposes and that neither was able to recall the time and date of Bailor's car repair. Ms. Jordan also notes that she spent "countless hours trying to determine the car repair issues… to no avail."   (ECF No. 158-3 at 1.)

With his reply, Petitioner has submitted affidavits from both Ms. Guthrie and Mr. Fortner. (ECF No. 160 at 20-21.) Ms. Guthrie states that she dropped off Petitioner and Ms. Bailor at a repair shop on Apalachee Parkway before 8:00 a.m. on the morning of October 9, 2009.   She also notes that during the late evening of October 8, 2009 neither Bailor nor Petitioner had access to any vehicles, since Bailor's vehicle was at the

repair shop. Ms. Guthrie does not mention that she was the person who picked Ms. Bailor up after Bailor left her vehicle at the repair shop.

Mr. Fortner, whose affidavit was notarized by Ms. Guthrie, states that after approximately 10:30 p.m. on October 8, 2009, Petitioner and Ms. Bailor had to rely on Guthrie and Fortner for transportation because Ms. Bailor's vehicle was at the repair shop. (ECF No. 160 at 21.) Both witnesses say that they told Petitioner's attorney they would be willing and able to testify at trial, and were present at trial.

Thus, according to Petitioner, Guthrie's and Fortner's testimony would have been presented to confirm that Petitioner and Bailor spent the night at Guthrie's residence, that Bailor's vehicle was taken to the repair shop during the late evening of October 8, 2009, that both Guthrie and Fortner were awake and preparing for work prior at 7:00 a.m. on October 9, 2009 and had observed Petitioner at the residence, and that Guthrie drove Petitioner and Bailor to the repair shop before 8:00 a.m. that morning.

Neither counsel nor his investigator were able to confirm the truth of these statements after their interviews with the purported witnesses. Notably, there is a lack of corroborating evidence about the unidentified

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

repair shop on Apalachee Parkway and when Bailor's vehicle allegedly was there.   But, there appears to be no dispute that rightly or wrongly counsel interviewed the witnesses and based upon the interviews counsel concluded that the testimony of the two witnesses would not have been helpful and may have been harmful to his client.   Counsel's decision not to call these witnesses therefore was not constitutionally deficient performance.

### b.   *Failure to Interview witnesses*

Petitioner contends that counsel was constitutionally ineffective because he failed to interview Brittany Snyder and R.J. Snyder, who, Petitioner says could have provided impeachment evidence against Christy Bailor. Specifically, he asserts that these witnesses would have testified that they had not dined with Petitioner and Bailor at a Mexican restaurant just prior to Petitioner and Bailor going to the motel where the discussion about robbing or burglarizing the pharmacy took place.

Christy Bailor testified at trial that she and Petitioner were eating at El Jalisco Mexican Restaurant with R.J. and Brittany when Petitioner went outside to engage in a drug transaction inside Maxwell's vehicle. (*See* ECF

No. 120 at 238-240; 262-263.) When a restaurant employee noticed the transaction, she telephoned Petitioner and told him that they had been spotted and they needed to leave, which they did. Petitioner claims that the events in question did not occur. He says that Maxwell's testimony on direct examination about getting drugs from Petitioner at the Mexican restaurant seemed to support Bailor's version of events (see ECF No. 118 at 110-111), was contradicted on cross when Maxwell said that he did not have the money to pay for any drugs, which is why he was having withdrawals. The fact that Maxwell did not have any drugs or the money to pay for drugs is evidence of a motivation to commit the burglary.

Counsel avers in his affidavit that Brittany and R.J. Snyder were never identified to counsel or the investigator. Further, he says that whether they dined with Bailor and Petitioner at a restaurant was immaterial to any issue at trial. (ECF No. 158-2 at 1.) Similarly, Investigator Jordan's email to counsel states that she had no memory or notes in the file regarding the names of Brittany and R.J. Snyder. She further that although Petitioner provided numerous names during their meetings, the names he provided

were nicknames or merely first names, leaving Ms. Jordan little possibility

of locating the witnesses. (ECF No. 158-3 at 1.)

Even if the witnesses could have testified as Petitioner now suggests,

whether they had dinner with Petitioner and Bailor, as testified to by Bailor,

was not probative of any significant issue at trial. Petitioner's assertion that

the restaurant meeting was the focal point to explain how and why the trio

came to be at the motel where the alleged planning took place is not

persuasive. (ECF No. 160 at 11.)    Accordingly, Petitioner has not shown

counsel was constitutionally ineffective for his failure to locate and call

these witnesses.

### c. Failure to object to 404(b) evidence and request limiting instruction

Petitioner contends that counsel was ineffective when he failed to

object to the introduction of bad acts evidence regarding his alleged

participation in drug transactions, and failed to request limiting instructions.

As a result, he says, the jury convicted him based upon his alleged prior

bad acts rather than the conduct alleged in this case.

Evidence of prior bad acts is not admissible to prove a person's

character and show that a person acted in accordance with this character

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

on a particular occasion. Fed.R.Evid. 404(b)(1). Such evidence may be

admissible to show motive, opportunity, intent, preparation, plan,

knowledge, identity, absence of mistake, or lack of accident. Fed.R.Evid.

404(b)(2). Upon request by a defendant in a criminal case, the prosecutor

must provide reasonable notice of the general nature of any such evidence

that the prosecutor intends to offer and do so either before trial or during

trial if the court, for good cause, excuses the lack of pretrial notice.

Fed.R.Evid. 404(b)(2).

The Government did not file a 404(b) notice except as it pertained to

the testimony of Christy Bailor, which notice was filed shortly before Bailor

testified at trial. Counsel objected to the proffered testimony and to Bailor

testifying about any acts of drug dealing and drug possession that were not

charged as part of the indictment in this case. (ECF No. 120 at 231.) The

Government responded that its questions regarding drug distribution would

be limited to the drugs stolen during the burglary in question, other drugs

Petitioner sold in Bailor's presence during the days surrounding the

burglary, and the drugs that she was provided in exchange for drawing the

map of the pharmacy. (ECF No. 120 at 232.) The court overruled the

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

defense objection, within the limitations explained by the Government.
(*Id.*).

Petitioner says that numerous Government witnesses including
Detective Hoover, Shane Maxwell, and Holli Prather testified about his
alleged drug dealings, and counsel neither objected nor sought a limiting
instruction. (ECF No. 150 at 18-19.)

Counsel avers in his affidavit that he "objected to bad acts evidence
and it is the best recollection of counsel that that was covered in the court's
final instructions to the jury." The Government points to pages four through
seven of the jury instructions, the general instructions concerning
consideration of the evidence and testimony of witnesses. There was no
specific jury instruction regarding prior bad acts, because the "prior bad
acts" to which the witnesses testified were arguably part and parcel of the
offense conduct charged in this case, rather than separate incidents that
were remote in time, as contemplated by the rule. *See* <u>United States v.
Carrasco</u>, 381 F.3d 1237 (11th Cir. 2004) (discussing the admissibility of
evidence concerning defendant's drug activities three years prior to his
indictment in that federal case).

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

Under these circumstances, counsel was not constitutionally ineffective for his failure to object to, or require a limiting instruction with respect to, evidence about Petitioner's contemporaneous drug dealings or actions related to the offense conduct in this case.

### d. Failure to Impeach Government Witnesses

Petitioner contends that trial counsel failed to impeach the Government witnesses on collateral matters using the telephone records of Bailor and Maxwell. First he says that Bailor testified that while she and Petitioner were at a Mexican restaurant the afternoon of October 8, 2009, she called him to warn him about an employee watching him and Maxwell, although phone records reflect that she did not call him until 10:59 p.m.

Petitioner also asserts that phone records could have been used to impeach Bailor about the time of the alleged meeting in the motel.   Bailor testified that the meeting, where the burglary was discussed, occurred between the hours of 6 and 7 p.m. Petitioner asserts that phone records disclose that Maxwell called Bailor at 6:32 p.m, which, Petitioner argues, would have been highly unlikely if the two were in the same motel room. (ECF No. 150 at 21.) Petitioner concedes however that Bailor testified that

she left the room at one point to retrieve her coffee maker from her vehicle, which was packed for her move to Texas. Petitioner says that the Farmer's Almanac discloses that the sun set at 7:14 on October 8, 2009, and in light of Bailor's testimony that it was light outside when they went into the room and dark when they left the motel, the meeting could not have occurred at the time she recalled. (*Id.* at 20.)

However, Bailor testified that the conversation took "hours," which was not inconsistent with the Almanac. (ECF No. 120 at 241.) Bailor's testimony that Petitioner's cell phone was off was contradicted by her own testimony about calling him, which would have been apparent to the jury. Finally, Petitioner notes that although Bailor testified that she knew Maxwell only in passing, phone records disclosed several calls from her phone to Maxwell's on October 8, 2009, lasting longer than any conversations between Petitioner and Maxwell. If true, this could be explained by Petitioner using her phone.

Although Bailor's testimony may have been internally inconsistent, the fact remains that the matters about which Petitioner contends Bailor should have been impeached were collateral matters. Accordingly,

Petitioner has not demonstrated that the proposed impeachment, in light of

Bailor's already inconsistent testimony, would have altered the outcome of

the proceedings.   Consequently, counsel's performance was not

constitutionally deficient.

### e.   *Failure to Investigate*

Petitioner contends that trial counsel was constitutionally ineffective

when he failed to investigate and obtain cell phone tower information for

Bailor's cell phone. He claims that cell tower data from Bailor's phone

would have been shown that the location of her cell phone on the morning

of October 9, 2009 was within a couple hundred meters of its actual

location. Petitioner cites United States v. Acton, Case 2:12-cr-0463-JHH-

JEO, 2013 U.S. Dist. Lexis 17974, 2013 WL 541374, 2013 WL 541425

(N.D. Ala. Feb. 11, 2013) (adopting a report and recommendation which

mentioned law enforcement's use of "active GPS information from a cell

tower demonstrating that the defendant's cell phone was in the immediate

area," which, along with other evidence, formed the basis for law

enforcement's reasonable belief that defendant was within the premises

sought to be searched) as support for his argument. He claims that the cell

phone evidence would have supported the defense position that Petitioner remained at Guthrie's apartment that morning, and would also support his contention that Bailor had taken her car to the repair shop at 10:45 p.m.

Petitioner's argument suggests that the cell phone tower data could have been obtained regardless of whether the phone was in use. This is ot necessarily so. A cell phone tower is not an infallible tracking device. *See* United States v. Davis, 785 F.3d 498 (11th Cir. 2015); United States v. Ransfer, 749 F.3d 914 (11th Cir. 2014) (noting that witness mapped the cell phone tower location for each phone call). When an individual uses his or her cell phone, the cell tower used will typically be the cell tower closest to the user. Davis, 785 F.3d at 501. However, the cell tower has a circular radius of varying sizes, and it is impossible to precisely place the location from which the calls were made. *Id.* at 501-502. Accordingly, Petitioner has not shown that counsel was constitutionally ineffective for his failure to secure the records in question.

### f.   *Failure to object to lack of Overt Act allegation in jury instructions*

Petitioner asserts that counsel failed to object to the court's failure to include an overt act in the jury instructions. Petitioner was charged in Count

one of the indictment with participating in a conspiracy to commit a burglary involving controlled substances in violation of Title 18 U.S.C. § 2118(b)(1). (ECF No. 1.) Title 18 U.S.C. § 2118(d) provides that "[i]f two or more persons conspire to violate subsection (a) or (b) of this section and one or more of such persons does any overt act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than ten years or both."

The Supreme Court has held that when a statute specifically requires the commission of an overt act, an overt act must be alleged in the indictment and found by a jury beyond a reasonable doubt. *See* <u>Whitfield v. United States</u>, 543 U.S. 209 (2005). The indictment listed fourteen overt acts allegedly committed by Petitioner, co-defendant Bailor, or both. (ECF No. 1 at 2-5.) Petitioner's participation, which was supported by the evidence at trial, was that he participated in a meeting concerning the burglary, responded to a call from the co-conspirators requesting bleach, drove the co-conspirators back to the pharmacy so blood could be cleaned, and received a cut of the burglary proceeds. (ECF No. 1.)

In his affidavit, defense counsel states that he "has no recollection of whether or not the jury was given an overt act instruction." (ECF No. 158-2 at 2.) Counsel states that the failure to have included same "would be the basis for a direct appeal." (*Id.*).

The jury instructions in this case contained no overt act instruction. However, a careful reading of the statute cited by Petitioner reveals that no such instruction was necessary because Petitioner was subject to the statutory punishment even without personally engaging in an overt act. The statute requires agreement between two or more persons, but only that one or more of such persons engage in an overt act. 18 U.S.C. § 2118(d). There was abundant evidence of overt acts performed by other conspirators. As such, counsel was not constitutionally ineffective for not requesting an overt act instruction.

### g. Failure to Request Limiting Instruction

In Petitioner's final ground for relief, he alleges that counsel was constitutionally ineffective when he failed to request a limiting instruction with regard to the Government's use of Agent Heath's testimony to impeach Sarah Padgett's prior statements at the close of trial.

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

Ms. Padgett, Petitioner's sister, was the third of the alleged co-conspirators to testify. (ECF No. 120 at 221-232.) The Government attempted to elicit testimony from her that would corroborate the testimony Maxwell and Prather gave the previous day, but Ms. Padgett testified in contradiction to her prior proffered statements. She claimed that she had lied to investigators about her brother's involvement, that she had never seen him with any pills and she did not call her brother when the stolen items were seized from her storage unit. The Government called Agent Heath to rebut Ms. Padgett's prior inconsistent statements. (ECF No. 120 at 285-302.) Petitioner says that under Federal Rule of Evidence 801(d)(1) counsel should have sought a limiting instruction with respect to Heath's testimony that, as part of her proffered statements, Ms. Padgett admitted that Petitioner was part of the conspiracy. He argues that Agent Heath's testimony essentially served to vouch for the truthfulness of Ms. Padgett's prior statement, which is impermissible without a limiting instruction. *See* United States v. Sisto, 534 F.2d 616 (5th Cir. 1976).

In Sisto, the defendant had been charged with importation of liquid cocaine. A witness testified that the defendant had been given the bottle by

a stranger in the Cali Columbia airport and denied that the man's travels to

Columbia involved intent to bring back cocaine. A case agent testified

about the witness's prior inconsistent and inculpatory statements. The court

noted that it was irrefutable that the agent's testimony was admissible for

impeachment purposes; the only question was whether the testimony had

to be accompanied by a limiting instruction. Sisto, 534 F.2d at 622. The

court noted that the agent's testimony "was clearly hearsay with regards to

[defendant's] action, and should not have been considered by the jury as

direct evidence of [defendant's] guilt." *Id.,* 534 F.2d at 623. In that case,

however, the lack of a limiting instruction was particularly egregious

because the agent's testimony provided the only direct evidence of the

defendant's knowledge of the contents of the bottle he was transporting,

and thus "must have been a major factor in the jury's deliberation." *Id.,* 534

F.2d at 625-26. The Fifth Circuit observed that a trial court's failure sua

sponte to give a limiting instruction would be plain error only when the

impeaching evidence is extremely damaging, the need for the instruction is

obvious, and the remainder of the Government's case is not strong. *Id.,* 534

F.2d at 626.

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

That is not the situation presented in this case. Ms. Padgett's testimony bordered on incredible. The impeaching evidence, while damaging, only corroborated testimony offered by other witnesses.

Agent Heath testified that he sat in on two proffers with Ms. Padgett, one before and one after her plea. (ECF No. 120 at 287.) With respect to the post-plea proffer, Agent Heath described Ms. Padgett's apparent hesitancy to implicate additional individuals and her admission of her brother's involvement as having been delivered in a "defeatist" tone. (ECF No. 120 at 288.) He testified that Ms. Padgett stated that Petitioner had provided the bleach for the conspirators to return to the pharmacy and clean up, and drove the vehicle back to the pharmacy. Agent Heath also testified that he was present at Ms. Padgett's sentencing hearing, when she took the stand and testified, consistently with her proffer to law enforcement, that her brother had delivered bleach to the conspirators before driving them back to the pharmacy. (ECF No. 120 at 289.) The court sustained defense counsel's objection to Heath being asked whether her former testimony was consistent with the testimony she had given at Petitioner's trial. Heath further testified that law enforcement did not merely

accept the conspirators' statements at face value, but rather that they investigated to confirm or corroborate what they had been told. The Government introduced phone records for phones affiliated with Christy Bailor and Shane Maxwell, which confirmed contact between Bailor and Maxwell on October 8 and 9, 2009, and thus provided some corroboration of what Bailor and Maxwell had stated during their proffers. (ECF No. 120 at 290-297.) On cross-examination Heath reiterated that Ms. Padgett had implicated her brother and that she had been hesitant to do so. (ECF No. 120 at 299-302.)

The substance of this testimony went beyond the question of whether Ms. Padgett had given a prior inconsistent statement. Accordingly, Counsel was not ineffective for his failure to ask for a limiting instruction.

<u>Conclusion</u>

The Government's case was not without weaknesses, including its own witnesses. However, it did not choose these witnesses. As is true in many criminal cases, the only potential witnesses to criminal deeds are other individuals who were somehow involved, and thus do not themselves have "clean hands." A judgment of acquittal is not required simply because

the Government's case relies on "an array of scoundrels, liars and

brigands" United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985)

(internal quotation marks and citation omitted).

For all of the foregoing reasons, the Court concludes that Petitioner

has failed to show that any of the claims raised in his motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor

has he shown that an evidentiary hearing is warranted. Therefore

Petitioner's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings

provides that A[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant, and if a

certificate is issued "the court must state the specific issue or issues that

satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of

appeal must still be filed, even if the court issues a certificate of

appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of

the denial of a constitutional right.   § 2253(c)(2); Slack v. McDaniel, 529

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 145) should be **DENIED**.

2.    A Certificate of Appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 22nd day of February, 2017.

*/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

Case Nos.: 4:10cr46/MW/GRJ; 4:13cv687/MW/GRJ

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**